DECISION
This is an appeal from the decision of Massachusetts Peer Review Organization (herein "MassPRO") affirming Blue Cross and Blue Shield's (herein "BC/BS") decision denying appellant's medical benefits. Jurisdiction is pursuant to G.L. 1956 §42-35-15.
 FACTS/TRAVEL
Appellant is a female who has been diagnosed with various illnesses which include fibromyalgia and osteoarthritis. (Exhibit 28) The record indicates that appellant has been receiving physical therapy since at least 1990 for the above-mentioned and other illnesses. (Exhibit 58)
By letter dated January 29, 1996, BC/BS declined to cover appellant's physical therapy sessions performed between January 23, 1995 and October 25, 1995. (Exhibit 35) The letter stated that "no prior approval was given" and "documentation [did] not support the medical necessity of these services." Id. The letter went on to state that BC/BS covers physical therapy only if the sessions are "medically necessary and rehabilitative in nature."Id.
Appellant requested an appeal of the denial of benefits.[1]
(Exhibit 26) After review by Physical/Occupational Therapy Consultant Al Loiselle (Exhibit 11) and Dr. Noto (Exhibit 12), appellant's denial of benefits was upheld. Appellant was notified of the decision by letter dated March 21, 1996. (Exhibit 38) Also, on April 12, 1996, while the case was on first appeal, appellant's file was referred to another physician, Dr. Buyce. (Exhibit 12) Dr. Buyce agreed that benefits should be denied and further noted that Fass' treatment was "maintenance therapy which was not a covered benefit." Id.
By letter dated August 28, 1996, appellant requested a second level appeal and asked that letters from Dr. Stuart Schwartz and physical therapist Arthur Keegan, be considered. (Exhibit 29) Upon review by Dr. Jayasanker, an independent orthopedic MD, appellant's benefits were once again denied.[2] (Exhibit 16) Appellant was notified of the denial and her right to appeal.
Shortly after the second level appeal, appellant was informed of her right to submit her case for external review.[3]
(Exhibit 48) Appellant submitted a sealed letter to MassPRO for consideration in its review. (Exhibit 56) The case was submitted to MassPRO on December 20, 1996. (Exhibit 57) Upon review of appellant's medical record, MassPRO affirmed BC/BS's denial of benefits. (Exhibit 58) In its letter, MassPRO noted that "physical therapy as recommended by several physicians is not contraindicated but whether it qualifies as needed forrehabilitation has not been demonstrated".[4] Id.
The instant appeal followed. Appellant maintains that MassPRO failed to consider evidence in upholding the BC/BS denial and failed to apply the correct medical standard for determining medical coverage. Further, appellant contends that her rights were prejudiced and seeks relief in accordance with G.L. 1956 § 42-35-15.
 Timely Appeal
Appellee MassPRO contends that this appeal, filed February 7, 1997, should be dismissed as untimely in accordance with the provisions of G.L. 1956 § 42-35-15. Section 42-35-15 (b) of the Rhode Island General Laws provides "Proceedings for review are instituted by filing a complaint in the superior court of Providence County or in the superior court in the county in which the cause of action arose, . . . within thirty (30) days after mailing notice of the final decision of the agency . . . ." Seealso, Considine v. Dept. of Trans., 564 A.2d 1343, 1344 (R.I. 1989).
It is undisputed that a copy of appellee's final decision was mailed to appellant in December 1996. (Brief of Appellant at 6; Brief of Appellee MassPRO at 3). This initial letter, however, was incorrectly dated December 30, 1995. (Exhibit 58) A corrected letter, dated December 30, 1996 and labeled CORRECTED, was mailed to the appellant sometime afterwards (Exhibit 58). See also Brief of Appellee at 3 (stating that the corrected letter was mailed to the appellant "shortly thereafter"); Appellant's Amended Complaint at 5 (stating that appellee's final decision was mailed on January 9, 1997). Since the corrected letter was technically the amended, final decision of the agency, appellee's argument is without merit.
 Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n., No. 96-112-M.P., Slip Op. at 7 (R.I., filed June 9, 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. RhodeIsland Public Telecommunications Authority, et al. v. RhodeIsland Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 STANDARD FOR DETERMINING BENEFITS
The appellant contends that MassPRO applied the incorrect medical standard for determining medical coverage. Specifically, appellant argues that in determining medical coverage, the terms "rehabilitative" and "medically necessary" were incorrectly interchanged.
Section 1.3 of the BC/BS Direct Pay Subscriber Agreement defines medically necessary.
 "MEDICALLY NECESSARY means that the surgical, medical or other services provided to treat your illness or injury:
 (a) are reasonably necessary and appropriate;
 (b) are required for reasons other than your convenience or the convenience or your doctor or other health care provider;
 (c) cannot be performed in a more cost-effective manner at a facility providing a less intensive level of care; AND
 (d) are not determined by us to be experimental, educational or investigational.
 . . .
 We determine Medical Necessity on a case-by-case basis. THE FACT THAT YOUR DOCTOR PERFORMED OR PRESCRIBED A PROCEDURE DOES NOT MEAN THAT IT IS MEDICALLY NECESSARY."
Additionally, Section 6.22 refers to "Services Not Medically Necessary."
 "We will not cover hospital care (admission tests, supplies, or continued care), medical care, rehabilitation, or other services which we determine are not Medically Necessary. (See Section 1.3 — Definitions.) We have the right to use any reasonable means to determine Medical Necessity of this care and we may examine hospital records, reports and hospital utilization review committee statements.
 We have the right to deny or reduce payments if a doctor or hospital does not supply medical records required to determine Medical Necessity. We also have the right to deny or reduce payment if the records supplied do not justify performing the service."
Section 3.14, entitled "Physical/Occupational Therapy," reads as follows:
 "INPATIENT
 We will cover inpatient physical or occupational therapy services as a SPECIAL SERVICE, listed in Section 1.3 — Definitions.
 OUTPATIENT
 If you are treated as an outpatient in a hospital, we will cover physical or occupational therapy received from a licensed physical or occupational therapist. Certification of continued Medical Necessity is required after the 10th visit or session. This therapy must immediately follow:
 (a) a hospital stay;
 (b) a home care program; or
 (c) an ambulatory surgical procedure to treat or diagnose a condition requiring physical rehabilitation and must be rehabilitative in nature.
 . . .
 If you require outpatient physical or occupational therapy as a subsequent treatment plan to the original rehabilitation program, we may cover the therapy under the Major Medical program. See Section 5.0 — Major Medical.
 . . .
 IN A DOCTOR'S/THERAPIST'S OFFICE
 Physical or occupational therapy services received from a licensed physical or occupational therapist in a private office may be covered under the Major Medical program. See Section 5.0 — Major Medical."
 . . .
Section 6.28 reads "We will not cover the supervision of maintenance therapy for chronic disease which is not aggravated by surgery and would not ordinarily require hospitalization. We will cover physical rehabilitation services only until a maximum level of functioning is achieved."
It is clear from the language of the subscriber agreement that not all "medically necessary" services are covered medical benefits. This includes physical therapy sessions classified as maintenance and not required for rehabilitation purposes. Thus, to qualify for medical coverage under the agreement, appellant's physical therapy needed to be medically necessary and rehabilitative in nature. In its correspondence, BC/BS attempted to clarify the "maintenance" "rehabilitation"/"medically necessary" dichotomy. For example, by letter to appellant dated January 29, 1996, BC/BS stated that appellant's "Subscription agreement covers physical therapy services if the services are medically necessary and rehabilitative in nature." (Exhibits 35, 36 and 40) Since the terms medically necessary and rehabilitative were not incorrectly interchanged, the issue of whether the record supported a finding that appellant's physical therapy sessions were for maintenance and not rehabilitative purposes is now before the reviewing Court.
 The Agency Decision
Appellant contends that MassPRO failed to review "critical evidence as well as evidence contained in the administrative file." In its decision letter dated December 30, 1996, MassPRO upheld the decision of BC/BS. (Exhibit 58) Although MassPRO did not question appellant's need for physical therapy, it concluded that the "physical therapy the patient received was maintenance physical therapy and not rehabilitative." Id. The record supports MassPRO's decision.
The agency had before it the following. In a letter dated August 15, 1994, Dr. Stuart Schwartz, M.D. indicated that appellant's physical therapy was for maintenance purposes. When writing about appellant's condition, Dr. Schwartz stated that appellant has "undergone physical therapy for several years which has been very helpful in maintaining her range of motion and alleviating pain." (Exhibit 21) Additionally, Arthur Keegan, a physical therapist familiar with appellant's condition, also indicated that appellant's physical therapy sessions were for maintenance purposes. In a September 23, 1996 letter to BC/BS he wrote that appellant's "overall condition has deteriorated" and that "in order to maintain her current functional level she would require PT . . . ." (Exhibit 30) Finally, the record contains the expert opinions of various doctors and specialists who, during this extensive appeal process, have reviewed appellant's records and have all concluded that the physical therapy treatments that appellant was receiving were maintenance in nature. (See e.g., Exhibits 10, 11, 12, 16.) After a review of the entire record, this Court finds that the agency's decision is not clearly erroneous in view of the reliable, probative and substantial evidence of the record.
 Appellant's Rights
Furthermore, appellant asserts that MassPRO prejudiced her rights on appeal. Specifically, appellant contends that BC/BS did not give her an opportunity to review her file before the external appeal, that MassPRO's review was conducted by an internist not a specializing physician, and finally, that BC/BS's denial of benefits after appellant received treatment violated her substantial rights.
A review of the record indicates that appellant was provided with a list of the documents contained in her case file as well as a summary of review reports. (See Exhibits 52, 54.) Also, appellant was given the opportunity to submit a sealed letter to MassPRO. (Exhibit 54.) This letter, was received by MassPRO in consideration for the external review. (Exhibit 56) Additionally, with respect to reviewing physicians, the statute provides that "neutral physicians or dentists shall be utilized to make final determinations." G.L. 1956 § 23-17.12-10 (b)(2). Nowhere does the statute require that the reviewing physician specialize in the same area of medicine practiced by appellant's prescribing physician. The review of MassPRO's physician, certified in internal medicine, was not in violation of Section 23-17.12-10
(b)(2) of the Rhode Island General Laws. (Exhibit 58)
Finally, appellant's healthcare relationship with BC/BS is contractual in nature. See Juliano v. Health Maintenance Org. ofNew Jersey, No. 93 CIV. 8960 (NT), 1997 WL 83405 (S.D.N.Y. Feb. 27, 1997). The contract, which does not provide reimbursement for maintenance physical therapy, is outlined by appellant's subscriber agreement. The record demonstrates that appellant was on notice of her policy limitations in November of 1994. By letter dated November 21, 1994, BC/BS agreed to cover appellant's physical therapy sessions only up to December 30, 1994. (Exhibit 33) The letter instructed appellant that in order "to receive reimbursement for any additional visits, a recertification request must be approved by BC/BS of Rhode Island Id. Accordingly, substantial rights of the appellant were not violated.
After a review of the entire record, this Court finds that the agency's decision is not clearly erroneous in view of the reliable, probative and substantial evidence of the record, and substantial rights of the appellant have not been prejudiced. Accordingly, the decision of MassPRO is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] G.L. 1956 § 23-17.12-9.
[2] The second level appeal did consider a July 31, 1996 letter from Dr. Fadale. (Exhibit 47)
[3] G.L. 1956 § 23-17.12-10 entitled "External Appeals."
[4] It should be noted that the first letter sent by MassPRO was incorrectly dated December 30, 1995. A corrected letter dated December 30, 1996, labeled CORRECTED, was received by appellant on or about January 13 or 14, 1997 (See Appellant's Answers to Appellee MassPRO's interrogatories at 4, Exhibit 58).